IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 05-21496 |
| | ) | |
| **CARL LEMLEY KENNEDY, II,** | ) | Chapter 11 |
|     Debtor | ) | |
| | ) | |
| | ) | |
| **ROBERT L. JOHNS AS CHAPTER 11** | ) | |
| **TRUSTEE FOR CARL LEMLEY** | ) | |
| **KENNEDY, II,** | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | A. P. NO. 07-_____ |
| | ) | |
| **DENNIS P. FARRELL,** | ) | |
| **WILLIAM E. TIS,** | ) | |
| **CHARLES E. HERZING,** | ) | |
| **GUY FLUTY,** and | ) | |
| **FREEDOM INDUSTRIES, INC.,** | ) | |
| | ) | |
|     Defendants | | |

## COMPLAINT TO AVOID TRANSFER OF PROPERTY
## OF THE ESTATE AND FOR TURNOVER

The Plaintiff, Robert L. Johns as Chapter 11 Trustee for Carl Lemley Kennedy, II, for his complaint states as follows:

### Parties

1.  On May 17, 2005 (the "Petition Date"), Carl Lemley Kennedy, II (the "Debtor") filed a petition for relief in this Court under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq.*, in the proceeding captioned *In re: Carl Lemley Kennedy, II*, Case No. 05-21496 ("Bankruptcy Case"). Debtor remained in possession of his property and operated as a Debtor in Possession under 11 U.S.C. § 1107 until August 31, 2005.

{C1204325.1}

2. Robert L. Johns (the "Trustee") was appointed trustee of the Debtor's estate (the "Estate") by order of the Court entered in the Bankruptcy Case on August 31, 2005.

3. Defendant Dennis P. Farrell ("Farrell") is an individual with an address of 1344 Poca River Road North, Poca, West Virginia.

4. Defendant William E. Tis ("Tis") is an individual with an address of 100 Edgecrest Drive, Verona, Pennsylvania.

5. Defendant Charles E. Herzing ("Herzing") is an individual with an address of 124 Lintel Drive, McMurray, Pennsylvania.

6. Defendant Guy Fluty ("Fluty") is an individual with an address of Rt. 3 Box 5390, Louisa, Kentucky.

7. Defendant Freedom Industries, Inc. ("Freedom") is a West Virginia corporation created pursuant to Articles of Incorporation filed with the Secretary of State on or about February 10, 1992, with an address of 1415 Barlow Drive, Charleston, West Virginia 25311.

**Jurisdiction and Venue**

8. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

9. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).

10. Venue is appropriate before this Court pursuant to 28 U.S.C. § 1409(a).

**Facts**

11. The Trustee is the representative of the Estate with the capacity to bring suit, is accountable for property of the Estate, and has full authority to dispose of Debtor's property that is part of the Estate under 11 U.S.C. §§ 323, 541, 542, 544, 704 and 1106.

12. The Debtor was the incorporator of Freedom. Freedom's Articles of Incorporation (the "Articles") provide that Freedom was authorized to issue 100 shares of stock with a par value of $15.00 each. The Debtor was the owner of all of the 100 initial shares of stock in Freedom.

13. Freedom is engaged in the business of producing specialty chemicals for the mining, steel, and cement industries. Among other things, Freedom is a leading producer of freeze conditioning agents, dust control palliatives, flotation reagents, water treatment polymers and other specialty chemicals.

14. Upon information and belief, the Debtor later attempted to issue 900 additional shares in Freedom and convey an interest in Freedom to Farrell. The Debtor purported to own 500, or 50%, of the shares of stock in Freedom. Upon information and belief, Farrell purported to own the other 500 newly issued shares of his stock in Freedom.

15. Minutes of a meeting of the Freedom Shareholders reflect that on February 24, 2000, the shareholders met, that the corporation had issued 1,000 shares of stock and that the Debtor conveyed 450 shares in Freedom to Tis, Herzing, and Fluty, and Farrell conveyed 200 shares in Freedom to Tis, Herzing, and Fluty. As a result of these purported conveyances, Farrell purported to be the owner of 300 shares, or 30%, of the stock in Freedom; Tis purported to be the owner of 300 shares, or 30%, of the stock in Freedom; Herzing purported to be the owner of 300 shares, or 30%, of the stock in Freedom; and Fluty purported to be the owner of 50 shares, or 5%, of the stock in Freedom, all at a time when the maximum authorized shares of Freedom was 100.

16. The Trustee was recently advised that Fluty is no longer a shareholder of Freedom and that his shares were transferred to Farrell, but a notice of meeting prepared by a

{C1204325.1} 3

representative of Freedom dated on or about August 3, 2006, appears to treat Fluty's shares as having been redeemed by Freedom.  In addition, this post-petition notice attempts to conform the share ownership in Freedom to the authorized capital of 100 shares and reflects a reduced total outstanding shares of 100, with individual shareholder interests reduced proportionally.

17. Counsel for Freedom has advised the Trustee that Farrell, Tis, Herzing, and Fluty all received payments characterized as "distributions" from Freedom, based on their ownership of the shares.

18. According to the office of the West Virginia Secretary of State, Freedom's Articles of Incorporation were never amended to provide for the issuance of any shares in excess of the original 100 shares.

19. According to the office of the West Virginia Secretary of State, Articles of Amendment were never filed with the West Virginia Secretary of State amending Freedom's articles to provide for the issuance of any shares in excess of the original 100 shares.

20. The West Virginia Secretary of State did not issue a Certificate of Amendment effectuating any Articles of Amendment amending Freedom's articles to provide for the issuance of any shares in excess of the original 100 shares.

21. As of the Petition Date, all of the shares of stock in Freedom were uncertificated.

22. As of the Petition Date, the Board of Directors of Freedom had not passed a resolution allowing for the existence of uncertificated shares of stock.

23. As of the Petition Date, neither the purported transfer of shares from the Debtor to Farrell nor the purported transfer of shares from the Debtor to Tis, Herzing, and Fluty were registered.

24.     Under West Virginia law in effect in 1992 and 2000, a corporation's Articles of Amendment must indicate the aggregate number of shares the corporation has authority to issue and the par value of those shares.  W. Va. Code 1966 § 31-1-27(b) (repealed 2002).  A corporation may only issue the number of shares authorized in its articles of incorporation.  W. Va. Code 1966 § 31-1-78 (repealed 2002).  An increase in the number of shares the corporation has authority to issue may only be accomplished by Articles of Amendment.  W. Va. Code 1966 § 31-1-106(d)-(e) (repealed 2002).  To amend Articles of Incorporation, the corporation's Board of Directions must adopt a resolution that is submitted to a vote of the Shareholders. W. Va. Code 1966 § 31-1-107 (repealed 2002).  The Articles of Amendment must then be filed with the Secretary of State and are only effective upon the issuance of a certificate of amendment.  W. Va. Code 1966 § 31-1-31 (repealed 2002).

25.     Furthermore, the Board of Directors must authorize the existence of uncertificated shares of stock.  W. Va. Code § 31D-6-626(a).  Article 8 of the West Virginia Uniform Commercial Code provides that in order to acquire a security or an interest in a security, the security must be delivered.  W. Va. Code § 46-8-104(a)(1).  The delivery of an uncertificated share of stock occurs only when the issuer registers the purchaser as the registered owner upon registration of the transfer.  W. Va. Code § 46-8-301(b)(1).

26.     Freedom has never had any stock transfer records and has never registered any transfers of its shares of stock.

**Count 1:  Avoidance of Transfer to Farrell Under
West Virginia Corporate Law and 11 U.S.C. § 544(a)(2)**

27.     The Trustee restates and incorporates in this Count 1 the allegations in paragraphs 1 through 26 of this Complaint.

28. As of the Petition Date, the purported transfer of 500 shares of stock in Freedom to Farrell and the additional 400 to the Debtor was ineffective, void *ab initio* and unperfected under West Virginia law because under Freedom's Articles the issuance of the shares was not authorized. Thus, the Debtor's purported transfer to Farrell of 500 shares was invalid, ineffective and void.[1]

29. Under 11 U.S.C. § 544(a)(2), the Trustee holds the status of a creditor who as of the Petition Date, extends credit and obtains an execution against the debtor that is returned unsatisfied. The Trustee "may avoid any transfer of property of the debtor . . . that is voidable by" such a creditor. 11 U.S.C. § 544(a)(2).

30. Because the transfer of the 500 shares to Farrell and the issuance of the 400 shares to the Debtor was ineffective, void *ab initio* and unperfected as of the Petition Date, the original 100 shares of stock remaining in the hands of the Debtor, constituting 100% of the stock of Freedom, were subject to execution under West Virginia law, and alternatively, the shares purportedly transferred to Farrell were subject to execution under West Virginia law, which execution provides the judgment creditor with a lien on the shares:

> A writ of fieri facias or execution shall create a lien, from the time it is delivered to the sheriff or other officer to be executed, upon all of the personal property, or the estate or interest therein, owned by the judgment debtor at the time of such delivery of the writ . . . although such property was not levied on or capable of being levied on under the provisions of section six of this article.

W. Va. Code §§ 38-4-6, 38-4-8. The lien is in effect until the expiration of the statute of limitations on execution even if the execution is returned as unsatisfied. Id.

---

[1] See Complaint paragraph 24.

31. Accordingly, the Trustee has stepped into the shoes of such hypothetical execution lien creditor, and the transfer of the 500 shares in Freedom to Farrell may be avoided under and by virtue of the provisions of 11 U.S.C. § 544(a)(2).

32. Likewise, the transfer by Freedom to Farrell of any distributions on account of the avoided shares may in turn be avoided under and by virtue of the provisions of 11 U.S.C. § 544(a)(2).

33. Under 11 U.S.C. § 550, the Trustee is entitled to recover from Farrell any shares or their value that were purportedly transferred to Farrell together with distributions received on account of the avoided shares.

### Count 2: Avoidance of Unperfected Transfer to Farrell Under UCC Article 8 and § 544(a)(2)

34. The Trustee restates and incorporates in this Count 2 the allegations in paragraphs 1 through 26 of this Complaint.

35. As of the Petition Date, the purported transfer of the 500 shares from the Debtor to Farrell was ineffective and unperfected under West Virginia law because the issuance of uncertificated shares of stock was not authorized by the Board of Directors of Freedom and because Farrell was not registered as the owner of the shares following the purported transfer of those shares, as required to effect and perfect a transfer of uncertificated securities under Article 8 of the West Virginia Uniform Commercial Code.[2]

36. Under 11 U.S.C. § 544(a)(2), the Trustee holds the status of a creditor who as of the Petition Date, extends credit and obtains an execution against the debtor that is returned unsatisfied. The Trustee "may avoid any transfer of property of the debtor . . . that is voidable by" such a creditor. 11 U.S.C. § 544(a)(2).

---

[2] See Complaint paragraph 25.

37.     Because the transfer of the 500 shares by the Debtor to Farrell was ineffective and unperfected as of the Petition Date, the shares were subject to execution under West Virginia law, which execution provides the judgment creditor with a lien on those shares:

> A writ of fieri facias or execution shall create a lien, from the time it is delivered to the sheriff or other officer to be executed, upon all of the personal property, or the estate or interest therein, owned by the judgment debtor at the time of such delivery of the writ . . . although such property was not levied on or capable of being levied on under the provisions of section six of this article.

W. Va. Code §§ 38-4-6, 38-4-8.  The lien is in effect until the expiration of the statute of limitations on execution even if the execution is returned as unsatisfied.  Id.

38.     Accordingly, the Trustee has stepped into the shoes of such hypothetical execution lien creditor, and the transfer of the 500 shares in Freedom to Farrell may be avoided under and by virtue of the provisions of 11 U.S.C. § 544(a)(2).

39.     Likewise, the transfer by Freedom to Farrell of any distributions on account of the avoided shares may in turn be avoided under and by virtue of the provisions of 11 U.S.C. § 544(a)(2).

40.     Under 11 U.S.C. § 550, the Trustee is entitled to recover from Farrell any shares, or their value, that were purportedly transferred to Farrell together with distributions received on account of the avoided shares.

### Count 3: Liability of Tis, Herzing, and Fluty
### Under 11 U.S.C. § 550 as Transferees of Farrell

41.     The Trustee restates and incorporates in this Count 3 the allegations in paragraphs 1 through 40 of this Complaint.

42. To the extent that a transfer of shares in Freedom to Farrell is avoided under 11 U.S.C. § 544(a)(2), the Trustee is entitled to recover the property, or the value of the property, from any immediate transferee of the initial transferee. 11 U.S.C. § 550(a).

43. Tis, Herzing, and Fluty purport to be immediate transferees of shares of stock in Freedom from Farrell and of distributions received on account of the avoided shares.

44. The Trustee is entitled to recover any shares purportedly transferred to Tis, Herzing, and Fluty from Farrell, or the value of such shares, including any distributions received on account of the avoided shares.

### Count 4: Avoidance of Transfers to Tis, Herzing and Fluty Under West Virginia Corporate Law and 11 U.S.C. § 544(a)(2)

45. The Trustee restates and incorporates in this Count 4 the allegations in paragraphs 1 through 26 of this Complaint.

46. As of the Petition Date, the Debtor's purported transfers of 400 of the 450 shares of stock in Freedom to Tis, Herzing and Fluty on February 24, 2000, were ineffective, void *ab initio* and unperfected under West Virginia law because under Freedom's Articles the issuance of the 400 shares was not authorized. Thus, the Debtor's purported transfers of 400 of the 450 shares to Tis, Herzing and Fluty were invalid, ineffective and void.[3]

47. Under 11 U.S.C. § 544(a)(2), the Trustee holds the status of a creditor who as of the Petition Date, extends credit and obtains an execution against the debtor that is returned unsatisfied. The Trustee "may avoid any transfer of property of the debtor . . . that is voidable by" such a creditor. 11 U.S.C. § 544(a)(2).

48. Because the transfers of 400 of the 450 shares by the Debtor to Tis, Herzing and Fluty were ineffective, void *ab initio* and unperfected as of the Petition Date, the original 50

---

[3] See Complaint paragraph 24.

{C1204325.1}  9

shares of stock remaining in the hands of the Debtor, representing one-half of the authorized issued shares of the Debtor, were subject to execution under West Virginia law, and alternatively, 400 of the 450 shares purportedly transferred to Tis, Herzing and Fluty were subject to execution under West Virginia law, which execution provides the judgment creditor with a lien on the shares:

> A writ of fieri facias or execution shall create a lien, from the time it is delivered to the sheriff or other officer to be executed, upon all of the personal property, or the estate or interest therein, owned by the judgment debtor at the time of such delivery of the writ . . . although such property was not levied on or capable of being levied on under the provisions of section six of this article.

W. Va. Code §§ 38-4-6, 38-4-8. The lien is in effect until the expiration of the statute of limitations on execution even if the execution is returned as unsatisfied. Id.

49. Accordingly, the Trustee has stepped into the shoes of such hypothetical execution lien creditor, and the transfers of the 400 shares to Tis, Herzing and Fluty may be avoided under and by virtue of the provisions of 11 U.S.C. § 544(a)(2).

50. Likewise, the transfer by Freedom to Tis, Herzing and Fluty of any distributions on account of the avoided shares may in turn be avoided under and virtue of the provisions of 11 U.S.C. § 544(a)(2).

51. Under 11 U.S.C. § 550, the Trustee is entitled to recover from Tis, Herzing and Fluty any shares or their value that were purportedly transferred to Tis, Herzing and Fluty, together with distributions received on account of the avoided shares.

### Count 5: Avoidance of Unperfected Transfers to Tis, Herzing, and Fluty Under UCC Article 8 and 11 U.S.C. § 544(a)(2)

52. The Trustee restates and incorporates in this Count 4 the allegations in paragraphs 1 through 26 of this Complaint.

53. As of the Petition Date, the purported transfers of 450 shares from the Debtor and 200 shares from Farrell to Tis, Herzing, and Fluty, on February 24, 2000, were ineffective and unperfected under West Virginia law because the issuance of uncertificated shares of stock was not authorized by the Board of Directors of Freedom and because Tis, Herzing, and Fluty were not registered as owners of the shares following the purported transfer of those shares as required to effect and perfect a transfer of uncertificated securities under Article 8 of the West Virginia Uniform Commercial Code.[4]

54. Under 11 U.S.C. § 544(a)(2), the Trustee holds the status of a creditor who as of the Petition Date, extends credit and obtains an execution against the debtor that is returned unsatisfied. The Trustee "may avoid any transfer of property of the debtor . . . that is voidable by" such a creditor. 11 U.S.C. § 544(a)(2).

55. Because the transfers of the 450 shares by the Debtor to Tis, Herzing, and Fluty were ineffective and unperfected as of the Petition Date, the shares were subject to execution under West Virginia law, which execution provides the judgment creditor with a lien on the Shares:

> A writ of fieri facias or execution shall create a lien, from the time it is delivered to the sheriff or other officer to be executed, upon all of the personal property, or the estate or interest therein, owned by the judgment debtor at the time of such delivery of the writ . . . although such property was not levied on or capable of being levied on under the provisions of section six of this article.

W. Va. Code §§ 38-4-6, 38-4-8. The lien is in effect until the expiration of the statute of limitation on execution even if the execution is returned as unsatisfied. Id.

---

[4] See Complaint paragraph 25.

{C1204325.1}                                       11

56. Accordingly, the Trustee has stepped into the shoes of such hypothetical lien creditor, and the transfer of the 450 shares in Freedom to Tis, Herzing, and Fluty may be avoided under and by virtue of the provisions of 11 U.S.C. § 544(a)(2).

57. Likewise, the transfer by Freedom to Tis, Herzing, and Fluty of any distributions on account of the avoided shares may in turn be avoided under and by virtue of the provisions of 11 U.S.C. § 544(a)(2).

58. Under 11 U.S.C. § 550, the Trustee is entitled to recover from Tis, Herzing and Fluty any shares, or their value, that were purportedly transferred by the Debtor to Tis, Herzing and Fluty, including any distributions received on account of the avoided shares.

### Count 6:  Liability of Farrell and/or Freedom Under 11 U.S.C. § 550 as Transferees of Fluty

59. The Trustee restates and incorporates in this Count 6 the allegations in paragraphs 1 through 26 and 45 through 58 of this Complaint.

60. To the extent that a transfer of shares in Freedom to Fluty is avoided under 11 U.S.C. § 544(a)(2), the Trustee is entitled to recover the property or the value of the property, from any immediate transferee of the initial transferee.  11 U.S.C. § 550(a).

61. If and to the extent that Fluty transferred shares in Freedom to Farrell and/or Freedom, Farrell and/or Freedom would be immediate transferees of shares of stock in Freedom from Fluty and of distributions received on account of the avoided shares.

62. If and to the extent that any shares were transferred from Fluty to Farrell and/or Freedom, the Trustee is entitled to recover those shares, or the value of those shares, including any distributions received on account of the avoided shares, from Farrell and/or Freedom, as the case may be, as the immediate transferees of Fluty under 11 U.S.C. § 550(a)(1)-(2).

WHEREFORE, the Trustee prays that:

A.     The Court enter a judgment under Counts 1 and 2 against Farrell avoiding the purported transfer of 500 shares of Freedom by the Debtor to Farrell under and by virtue of 11 U.S.C.§ 544(a)(2), and avoiding the transfer of any distributions on account of the avoided 500 shares of Freedom under and by virtue of 11 U.S.C.§ 544(a)(2); the Court enter a judgment requiring that Farrell turn over the avoided 500 shares, or their value, together with distributions received from Freedom on account of the avoided 500 shares; and the Court enter a judgment against Farrell in an amount equal to the value of the avoided 500 shares, and distributions received on account of the avoided 500 shares, together with the Trustee's costs and attorney fees.

B.     The Court enter a judgment under Count 3 against Tis, Herzing and Fluty, as immediate transferees of a portion of the shares described in paragraph A, requiring that Tis, Herzing and Fluty turn over such shares, or their value, together with distributions received from Freedom on account of such shares; and the Court enter a judgment against Tis, Herzing and Fluty in an amount equal to the value of such shares and distributions received on account of such shares, together with the Trustee's costs and attorney fees.

C.     The Court enter a judgment under Counts 4 and 5 against Tis, Herzing and Fluty avoiding the purported transfer of 450 shares of Freedom by the Debtor to Tis, Herzing and Fluty under and by virtue of 11 U.S.C.§ 544(a)(2); the Court enter a judgment requiring that Tis, Herzing and Farrell turn over the avoided 450 shares, or their value, together with distributions received from Freedom on account of the avoided 450 shares; and the Court enter a judgment against Tis, Herzing and Fluty in the amount of the value of the avoided 450 shares and distributions received on account of the avoided 450 shares, together with Trustee's costs and attorney fees.

D.     The Court enter an judgment under Count 6 against Farrell and/or Freedom, as immediate transferees of the shares purportedly owned by Fluty, requiring that Farrell and/or Freedom turn over such shares, or their value, together with distributions received from Freedom on account of such shares; and the Court enter a judgment against Farrell and/or Freedom in an amount equal to the value of such shares and distributions received on account of such shares, together with Trustee's costs and attorney fees.

E.     The Court grant the Trustee such further and other relief as may be just and proper.

{C1204325.1}     13

Respectfully submitted,

**ROBERT L. JOHNS AS CHAPTER 11 TRUSTEE FOR CARL LEMLEY KENNEDY, II**

By Counsel

/s/ Michele M. Tysiak
William F. Dobbs, Jr. (WV Bar #1027)
Michele Mansfield Tysiak (WV Bar # 10111)
JACKSON KELLY PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
Telephone: (304) 340-1280
Facsimile: (304) 340-1080
e-mail: wdobbs@jacksonkelly.com
*Counsel for Trustee*